UNITED STATES, Appellee

v

RICHARD L. FOWLE, Electronics Field Seaman Apprentice, U. S. Navy, Appellant

7 USCMA 349, 22 CMR 139

No. 8389

Decided August 31, 1956

*Lieutenant (jg) Mitchell W. Rabbino* argued the cause for Appellant, Accused. With him on the brief was *Commander John W. Shields*.

*Commander Guilbert W. Martin* argued the cause for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was charged and tried by a special court-martial of two specifications alleging larceny, in violation of Article 121, 50 USC § 715. He pleaded guilty to the first specification, and a motion for a finding of not guilty was sustained as to the second. He was sentenced to a bad-conduct discharge, partial forfeitures, confinement at hard labor for three months, and reduction to grade of electronics field, seaman recruit. The convening authority reduced the confinement and forfeitures to two months. Higher reviewing authorities have affirmed the action of the convening authority. We granted review limited to the issue of whether a presentence discussion on Navy policy prejudiced the accused.

After the accused pleaded guilty to and was convicted of the first specification of Charge 1, the trial counsel insisted upon bringing to the court's attention Secretary of the Navy Instruction 5810.8, which states in substance that it is the Navy policy to separate persons from the service "convicted of larceny or any other offense involving moral turpitude." That portion of the

record relating to the Instruction is recited below:

"TC: The prosecution would like to read to the court SecNav Instruction 5810.8, from the Secretary of the Navy, to all ships and stations—subject: Larceny and other offenses involving moral turpitude—policy concerning.

"PRES: You can omit that—we are all aware of it.

"TC: *I would just like the court members to be aware of the fact that it is the policy to separate persons who have been convicted of offenses involving moral turpitude.*

"DC: In answer to the statement of the trial counsel, for the accused's benefit, the SecNav instruction 5810.8 does not take the discretion away from the members of the court-martial board as far as sentencing is concerned and if you do not desire to implement this policy you do not have to do so. I would just like to state that a nineteen year old boy—in the Navy but a few months and coming from a good family—going home with a Bad Conduct Discharge is a stiff stigma to bear for the rest of his life. If this offense had taken place in civilian life, the code of punishment or the standards on which the civilian courts judge petty larceny of $9.00, are much less than the Navy standard. I don't envy your position. You are in a position to send this boy back to civilian life with a BCD for petty larceny. I think this offense was based on his immaturity and not from a basic criminal drive. If this would take place in a civilian court the judge would award a suspended sentence, so while we are aware of this SecNav policy, I think you will agree it is a rather stiff one. If you feel that there is a chance that the accused might be redeemed through retraining you are in a position to make that possible.

"TC: *I would just like to state that I can see no reason for not implementing the SecNav instruction.*

"PRES: The court will be closed." [Italics supplied.]

The convening authority found as a matter of fact that the accused was prejudiced by the action of the trial counsel, and he attempted to purge any prejudice resulting therefrom by reducing the confinement and forfeitures from three to two months.

At the outset the accused contends that the trial counsel is prohibited from making an argument during the presentence stage of the proceedings. This Court rejected that contention in United States v Olson, 7 USCMA 242, 22 CMR 32. We there concluded that counsel for either side may present an argument for an appropriate sentence; however, we cautioned that such an argument should be based upon the evidence of record.

The problem with which we are here confronted is the effect of the trial counsel's statements to the court that the members thereof should "implement" the instruction. In United States v Littrice, 3 USCMA 487, 13 CMR 43, we remarked that it is one thing to make known in a command an overall service policy and quite another matter "to use that principle to influence the finding and a sentence in a particular case." The Court recognized the need in the service for a broad regulatory authority for the maintenance of discipline in United States v Hawthorne, 7 USCMA 293, 22 CMR 83. We added, however, that when commanders extend their authority into forbidden areas, we must strike down such action.

A policy directive may be promulgated to improve discipline; however, it must not be used as leverage to compel a certain result in the trial itself. In United States v Isbell, 3 USCMA 782, 14 CMR 200, we held that a circular which recited a policy respecting the undesirability of retaining thieves in the Army did not violate the law, but we did not hold expressly or impliedly that such a policy statement could be brought into the courtroom to influence the members of the court—irrespective of the particular merits of the case—to assess a punitive discharge. Although we are here faced with a secretary rather than a command directive,

the former, emanating from the Secretary of a service, would be even more persuasive and bring more pressure to bear upon the members of the court than the latter type directive. Nor do we believe that once the trial counsel insists that the policy respecting a punitive discharge be "implemented" with regard to an accused that the prejudice can be removed by the simple expedient of having the president or law officer remind the members of the court that they are not bound by the policy declaration. If everyone is presumed to know that as a general rule thieves should be separated from the service, why parade such information before the members of the court and then turn around and instruct them that they are not bound thereby, if the purpose is not to influence the court to adjudge a punitive discharge? It was against this sort of command influence that the Code was initially directed. Reasonable men must conclude that once the Secretary of a service enters into the restricted arena of the courtroom, whether the members of the court are conscious thereof or not, he is bound to exert some influence over them. A trial must be kept free from substantial doubt with respect to fairness and impartiality. "A judicial system operates effectively only with public confidence— and, naturally, that trust exists only if there also exists a belief that triers of fact act fairly." United States v Stringer, 5 USCMA 122, 17 CMR 122. This appearance of impartiality cannot be maintained in a trial unless the members of the court are left unencumbered from powerful external influences.

We cannot nicely gauge the precise quantum of error here; however, such a calculation is not required for the convening authority has found as a matter of fact that the accused was prejudiced by the trial counsel's remark to the court and we do not say as a matter of law that such a finding was erroneous. We disagree, however, with the convening authority that the error in this case could be purged by reducing the confinement and forfeitures by one month. The prejudice found by the convening authority necessarily re-

**352**

sulted from the instruction's demand that persons convicted of larceny be separated from the service. The error would, therefore, go to the punitive discharge adjudged. Accordingly, the board of review's decision is reversed and the record is returned to The Judge Advocate General of the Navy for a reconsideration of the sentence by a board of review.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I concur in the result, but my reasons for so doing are so fundamentally different from those announced by the majority that I feel a short explanation is necessary.

In United States v Olson, 7 USCMA 242, 22 CMR 32, we concluded that trial counsel had the right to argue, within the fair confines of the record, the appropriateness of sentence. With that issue disposed of, the only question of moment in this instance is whether a reference by trial counsel to a well-known policy of the Naval Service was an error which requires a reversal of the decision of the board of review. I answer the question in the affirmative, but only for the reason that the president of the court failed to advise its members that the policy declaration was not a mandate which must be followed in assessing sentence. Experience has indicated that uncertainty exists in that area, and so the failure to instruct the court members that they are not bound to enforce the policy may have caused them to assess a sentence which they deemed inappropriate in light of the facts before them.

In a number of instances we have passed on the right of a commander to issue general instructions concerning discipline within his command and the methods to be employed in improving it. We have also recognized what every serviceman knows, that the presence of thieves in a unit has a disturbing influence and a direct impact on its discipline and morale. In United States v Isbell, 3 USCMA 782, 14 CMR 200,

we held that a circular which set out a policy that the retention of thieves in the Army was undesirable was a publication which did not offend against the law. Furthermore, we well knew in that case that the court members were apprised of the policy, for on voir dire they were interrogated concerning their knowledge of the course being pursued to reduce thievery, and, for the most part, they acknowledged their familiarity with the circular. The instructions of the Secretary of the Navy with which we are presently concerned go no further. It thus follows that the formulation and publication of such a policy to the command is not contrary to the Code, the Manual, or our decisions.

In United States v Littrice, 3 USCMA 487, 13 CMR 43, and United States v Isbell, supra, we recognized that the timing of such a publication was a factor which must be considered, and here the policy was mentioned during the presentence proceedings. However, I find that to be of little importance in this setting. The subject was not mentioned as a means of forcing the court members to yield to a supposed master. It was given and accepted as information. To liken this case to United States v Littrice, supra, is to equate a molehill to the mountain. It appears absurd to me to hold that the publication of circulars setting out general policies on sentences is proper, and then hold it to be error to call them to the attention of the officers at the time they should be considered. If that is to be the law, we are indeed preaching unique military doctrine, for members of the armed forces should know the contents of publications of higher headquarters. In addition, by law and by decree of this Court they are legally charged with such knowledge. Here my associates are caught in the inconsistent position of saying officers cannot be told what legally they must know. This record alone bears testimony to the incongruity of the Court's holding. When trial counsel sought to state the policy of the Navy Department, the president of the court stopped him with the terse comment, "You can omit that— we are all aware of it." What, then, did trial counsel do to deny this accused an appropriate sentence? In the light of the president's statement, he was doing no more than reminding the court members of information they already possessed. Parenthetically, I might ask, why should members of a Service be kept in ignorance of proper policy directives? If it is wrong for them to know, the Service should be enjoined to remain silent. If it is right, the whole military world should know. If officers of the Services are not permitted to be informed of the contents of memoranda, regulations, or circulars dealing with discipline and punishment, then the solution is for the Services to cease publishing policy declarations. But the trouble with that prophylactic is that it strangles the commander's most effective means of maintaining discipline. Rather than support a rule which would reduce the dissemination of proper information, I would advocate one which spreads that knowledge. I must assume that a court-martial does its duty to both the accused and the Government when it is well informed, and injustices are more apt to result from too little knowledge than from too much. That leads me to my complaint here, which is, that this court-martial was not sufficiently informed.

In United States v Doherty, 5 USCMA 287, 17 CMR 287, this Court considered a Naval policy concerning sex perverts. We did not reverse that case because the members of the court, the convening authority, and appellate agencies were cognizant of Naval regulations which declared a general policy of separating homosexuals from the Service. What we did there was to hold that the case should be returned to the convening authority because he affirmed a bad-conduct discharge when he believed it inappropriate, under a mistaken belief that he had no alternative. Of course, he was not bound by the policy, and the case was reversed to afford him an opportunity to pass on the appropriateness of the sentence with full knowledge that he had the right to exercise his discretion. Had he been well advised, that error would not have occurred. Much as we seem to try,

**353**

we cannot close the minds of court members to matters which they know by virtue of experience and wisdom. However, we can require them to use the knowledge legally.

In this instance, defense counsel sought to make the points that the policy was general and need not be applied in any given case; that it was not binding on the court members if they concluded it to be inappropriate; and that they could make an independent determination in this case. He alerted the president of the court to the proper principle, but the latter failed to inform the court-martial members that such was the law. It is this failure which I believe constituted prejudicial error. Had an instruction been given to the effect that the policy referred to was no more than a guide, and that the court members were entitled to exercise their own discretion as to the appropriateness of sentence, I would find no wrong.

My associates seek to discredit that concept by labelling instructions a simple expedient with little or no effect. If so, then every American jurisdiction seems to be out of step but this Court and one of the most essential rights granted by the Uniform Code of Military Justice is of little avail. Rather than join my associates in that doctrine, I follow the rule often announced by us that instructions are an essential part of military due process of law. In addition, I subscribe to the principle that we presume the court-martial members followed the instructions given by the law officer or the president of the court. When I do that I must conclude that if the court-martial members were informed of the policy concerning a bad-conduct discharge, and then told it was discretionary with them as to whether it should be imposed in this case, they would impose it as a penalty only if they believed it appropriate. I have a conviction that officers of an armed service have the courage and fortitude to follow the dictates of their own conscience when they understand they are at liberty to do so. That is the reason why I believe an instruction would serve a valuable purpose in this and any criminal case.

Because of what I believe to be a prejudicial error, I join with my associates in reversing, and, as stated by them, the only way the error can be cured is by either disapproving the bad-conduct discharge or granting a rehearing. I agree, therefore, that this case must be returned to the board of review for further action.