UNITED STATES, Appellee

v

FRANCIS D. SLACK, Recruit, U. S. Army, Appellant

12 USCMA 244, 30 CMR 244

No. 14,484

Decided March 24, 1961

*First Lieutenant Jerome D. Meeker* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*Captain William A. Zeigler* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

We granted the accused's petition for review of his conviction of wrongful appropriation of an automobile belonging to a civilian to consider the correctness of the following instruction by the law officer in regard to the sentence:

"Normally the maximum punishment will be reserved for . . . a case in which there is evidence of a previous conviction involving an offense at least as serious as the one for which the accused is here on trial."

At trial, the accused did not testify, either before findings or sentence. Evidence of certain pretrial statements by him, admitted before the findings, indicates that he lied to the arresting officer in attempting to explain his presence in the stolen car at about 1:15 in the morning. During the sentence proceedings, trial counsel read the personal data regarding the accused as it appeared on the charge sheet. These data showed that he was nineteen years of age at the time of trial; that he had over two years of service; and had been in confinement about a month before trial. Also admitted in evidence was an extract from the accused's service record which established two previous convictions by court-martial. One was a special court-martial conviction on three charges, two of which were for unauthorized absence; and the last for "steal[ing]" a Buick sedan on a date about three months prior to the instant offense. Defense counsel said the accused had been advised of his right to present matter touching on the sentence and that he had elected to remain silent "at this time." No argument was made by trial or defense counsel. The law officer then instructed the court members that they "alone" were "responsible" for determining "an appropriate sentence." Elaborating on that idea he said:

"In exercising your discretion in determining the sentence to be adjudged, you should consider all the facts and circumstances of the case. In this regard, you may consider all matters in extenuation and mitigation as well as those in aggravation whether introduced before or after the findings, the nature and duration of the pretrial restraint.

"Normally the maximum punishment will be reserved for an offense which is aggravated by its circumstances and the conditions surrounding its occurrence or a case in which there is evidence of a previous conviction involving an offense at least as serious as the one for which the accused is here on trial. While the sentence adjudged should be an adequate one, you should not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or higher authority.

"The court is advised that the maximum punishment which may be adjudged in this case is a dishonorable discharge, forfeiture of all pay and allowances and confinement at hard labor for two years and reduction to the lowest enlisted grade which is Recruit (E–1). He is already Recruit (E–1) so that is inapplicable."

Defense counsel was asked if he had any objection to the instructions; he replied that he had none. Three minutes after closing to deliberate on the sentence, the court reopened and the president announced a sentence which was the maximum for the offense; namely, dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Manual for Courts-Martial, United States, 1951, paragraph 127*c.*

Apparently the challenged instruction is based upon language in the Manual for Courts-Martial, supra, paragraph 76*a,* which provides that the

**245**

maximum punishment will "normally . . . be reserved for an offense which is aggravated by the circumstances, or after conviction of which there is received by the court evidence of previous convictions of similar or greater gravity." See also Military Justice Handbook, "The Law Officer," Department of the Army Pamphlet No. 27–9, April 1958, Appendix XXXIII. In view of this apparent connection, appellate defense counsel maintain that the Manual itself was used as "leverage" to compel imposition of the maximum punishment. Cf. United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Wilson, 25 CMR 788. However, no reference was made to the Manual, and there is nothing whatever in the record of trial to suggest that the court-martial knew the instruction was an iteration of a Manual provision. Consequently, we are not dealing, as appellate defense counsel maintain, with the injection of executive policy into the judicial process; but, rather, with the legal effect of a particular instruction by the law officer. In other words, the point of inquiry is not the effect of "powerful external influences," but simply whether the instruction is proper; and if it is not, whether it prejudiced the accused. Cf. United States v Starnes, 8 USCMA 427, 24 CMR 237.

An instruction which invites the court-martial to compare the case before them with other cases of a generally similar nature is unwise and impractical. In United States v Mamaluy, 10 USCMA 102, 104, 27 CMR 176, we pointed out some of the difficulties incident to such comparisons. There the law officer's instructions were based upon other parts of paragraph 76a. Specifically, he advised the court-martial that it could consider, in determining the sentence, "the penalties which are adjudged in other cases for similar offenses," having due regard to the "circumstances attending each." We held that the instruction was "impractical, confusing, and of . . . doubtful validity," because, among other things, the factual information required for the compari-

**246**

son was not before the court-martial. Similar criticism can be made of the instruction here. First, it presupposes the court-martial knows the previous offense was "at least as serious as the one" of which the accused was convicted. Secondly, the standard by which they must determine seriousness is not defined. Was the previous offense "serious" because the maximum permissible punishment approximated that for the offense before the court; or was it serious because of the surrounding circumstances? Cf. United States v Fretwell, 11 USCMA 377, 29 CMR 193. Thus, the instruction leaves too much to the imagination or the private knowledge of the court members. This does not mean, of course, that evidence of previous convictions is not a proper matter for consideration by the court-martial. Certainly it is. What we are saying is simply that the present instruction is too broad a generalization. It suffers from the vice of the other parts of the "instructional pattern" of paragraph 76 of the Manual which, in the *Mamaluy* case, we recommended be discarded in favor of "instructions of more utility."

That an instruction is of doubtful value to the court-martial does not necessarily mean the accused is prejudiced by it. There must be some basis from which it can fairly be said the questionable instruction harmed the accused by adversely influencing the deliberations of the court members. The only basis upon which risk of harm can be predicated here is that the instruction can be construed as a direction to the court-martial to impose the maximum penalty because of the accused's previous convictions. We do not so interpret the instructions in this case.

The court members were expressly advised that they "alone" determine an "appropriate sentence"; that they had "discretion" to consider all the facts and circumstances of the case; and that they should not adjudge an "excessive" sentence in reliance upon "possible mitigating" action by re-

viewing authorities. The clarity and the directness of the instructions leave us with the conviction that the court-martial understood it was not bound by conscience, law, or practice, to adjudge a maximum sentence because of the accused's previous convictions. True, it did impose the maximum punishment for the offense, but the fact that it did so is not proof it believed *it had to do so*. Indeed, as indicated in our earlier recital of the facts, there is substantial justification in the surrounding circumstances for the sentence imposed. The accused deliberately lied to the police officer who apprehended him; he offered nothing to show repentance or a resolve to rehabilitate himself; and the frequency of his offenses indicated that strong measures of correction were required if his social reform was to be effected. Considering the sentence instruction as a whole, and all the circumstances of the case, we find no fair risk of prejudice to the accused.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

It can be expected that when, as here, an instruction which blends appropriate with inappropriate advice is being assessed for possible prejudice, differences in opinion on its effect may arise. In this instance, for reasons which will be hereinafter set out, I take a position with the Chief Judge that the accused was not harmed in any measurable degree by the inappropriate portion of the law officer's charge. His opinion outlines the factors he uses to support his conclusion, but there are others which supplement those he mentions.

I do not understand the questioned charge to operate to require harsh punishment under any circumstances. Moreover, I point out that ordinarily an instruction similar to the one given by the law officer is beneficial to an accused. The theory underlying the Table of Maximum Punishments is that the President prescribes a ceiling at a level which will permit the imposition of an appropriate sentence for the most aggravated form of the crime listed or for an accused who persistently refuses to comply with the norms of the military community. Had this accused been a first offender, the instruction would have been helpful because it would have suggested that the maximum sentence could not be considered appropriate. However, merely because a charge may harm an accused, in that it indicates he may fit in a category where a more severe penalty might be thought fitting, does not make it erroneous, and that effect is not the vice of the present instruction. The reason it should not meet with our approval is that it is vague, indefinite and uncertain and the court members cannot apply it intelligently. Whether one offense is as serious as another depends upon the facts and circumstances surrounding each. The court members are apprised of the nature of the offense that is before them, but they are totally uninformed of the character of the prior crime and that makes the measuring rod given to them too elastic to be of utility. However, no one would contend reasonably that a prior conviction for other offenses should not be considered by the court members in determining the punishment to be imposed. Certainly, it is an accepted doctrine of penology that stronger measures are called for when the accused is a persistent violator than when the offender is before the court for the first time. Therefore, the court was properly informed that the accused had been convicted on prior occasions, and the only questionable factor was the suggested comparison.

In assessing the possibility of prejudice to this accused, I believe it well to consider all the information before the court. If the instruction entered into the considerations of the court-martial members—and I assume it did—the only comparison between the two offenses the members could make must find its roots in the exhibit showing the prior conviction, and this seems to me to be far from detri-

mental to the accused. There is only one extract showing all prior trials. The entry of importance to the present issue shows a conviction for larceny and two absences without authority. In addition, it furnished the court with the sentence imposed. Those offenses were referred for trial and tried by a special court-martial which has limited jurisdiction and, in the absence of facts concerning the prior crimes, I must assume that the quantum of punishment imposed in the earlier court proceedings was the sole yardstick available to the present court members for measuring the severity of the offenses for which accused had been convicted in the past. With that assumption as a base, the exhibit reflects a minor transgression. For the three offenses previously mentioned, the accused was punished only to the extent of hard labor for three months and partial forfeitures for six months. A punitive discharge was not imposed, and neither was confinement. Therefore, I experience some difficulty in reaching a conclusion that the members sitting on the court which heard the case presently before us were compelled to impose the maximum punishment because the first crime was at least as serious as the one at bar.

At best, it is difficult to determine with particularity the factors which court members use in fixing punishment. However, there are certain ponderables in this record which aid in that task. In addition to the ones mentioned by the Chief Judge, I mention the fact that for some four months the accused had been incorrigible and the imposition of light sentences on two prior occasions had failed to deter his criminal tendencies. As a matter of some importance in that regard, at the time he committed this offense he was still undergoing punishment for his previous misappropriation of an automobile. When those facts are considered with his palpably false explanation of his presence in the car, his lack of contriteness, the absence of any extenuating and mitigating circumstances, and his failure to proffer anything in support of a desire to mend his ways, I reach the conclusion that the punishment was tailored to fit the man and the offense and was not influenced by the questioned instruction.

FERGUSON, Judge (dissenting):

I dissent.

Unlike my brothers, I believe that the law officer's instructions on the sentence were a major factor in causing the maximum penalty to be imposed in this case and were, therefore, prejudicially erroneous. The essence of the advice was to inform the court-martial that, ordinarily, an accused with a previous conviction of the same nature should be given the maximum sentence. This accused had such a conviction, and the instruction's impact is clearly demonstrated by the court's announcement, after deliberating for three minutes, of the most severe penalty it could legally adjudge.

The accused was tried by general court-martial for wrongful appropriation of a motor vehicle on April 16, 1960, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. After findings of guilty were announced, personal data relating to the accused was read from the charge sheet. It was thereby established that he was nineteen years of age, had approximately eighteen months' service, and had undergone pretrial confinement for approximately one month. Evidence of one previous conviction, for larceny of an automobile on January 9, 1960, and unauthorized absence was received.[1] The defense offered no evidence in mitigation and extenuation.

Thereafter, the law officer delivered the following instructions on the sentence to the court-martial:

---

[1]Following the trial, the staff judge advocate noted in his review that the accused had actually been previously convicted of wrongful appropriation rather than larceny. In order to eliminate prejudice flowing from this error, the convening authority reduced the period of confinement from two years to eighteen months. Otherwise, he approved the sentence.

"You are advised that you and you alone are responsible for determining within the limits prescribed by law an appropriate sentence in this case. In arriving at your determination, you should select, based upon the evidence presented in this case and your own experience and general knowledge, the kind and amount of punishment which will best serve the ends of good order and discipline within the Army, the needs of the accused, and the welfare of society.

"In exercising your discretion in determining the sentence to be adjudged, you should consider all the facts and circumstances of the case. In this regard, you may consider all matters in extenuation and mitigation as well as those in aggravation, whether introduced before or after the findings, the nature and duration of the pretrial restraint.

"*Normally the maximum punishment will be reserved for an offense which is aggravated by its circumstances and the conditions surrounding its occurrence or a case in which there is evidence of a previous conviction involving an offense at least as serious as the one for which the accused is here on trial.* While the sentence adjudged should be an adequate one, you should not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or higher authority." [Emphasis supplied.]

The court closed to deliberate on the punishment at 11:57 a.m. It reopened at noon and informed the accused that he had been sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years.

The law officer's instructions regarding the customary practice in imposing sentence if evidence of a similar previous conviction was received is obviously based upon the policy declaration to that effect contained in paragraph 76a(2), Manual for Courts-Martial, United States, 1951, and involves a fault which we have heretofore repeatedly condemned.

In United States v Fowle, 7 USCMA 349, 22 CMR 139, we specifically held it prejudicially improper for the trial counsel of a special court-martial to call to the attention of the court members a " 'policy to separate persons who have been convicted of offenses involving moral turpitude.' " Our language with respect to the trial counsel's argument in that case is quite pertinent here. Thus, we stated, at page 352:

". . . Nor do we believe that once the trial counsel insists that the policy respecting a punitive discharge be 'implemented' with regard to an accused that the prejudice can be removed by the simple expedient of having the president or law officer remind the members of the court that they are not bound by the policy declaration. *If everyone is presumed to know that as a general rule thieves should be separated from the service, why parade such information before the members of the court and then turn around and instruct them that they are not bound thereby, if the purpose is not to influence the court to adjudge a punitive discharge?*" [Emphasis supplied.]

The principal opinion makes much of the fact that the advice of the law officer left the sentence fully to the discretion of the members of the court-martial. If that be true, it is passing strange that so much emphasis was placed on the necessity for normally adjudging the maximum sentence if there was a previous conviction for a similar offense—as there was. It is even stranger that the court members reacted so promptly and adjudged the penalty so precisely suggested to them. Their action and the reference to the "normal" use of the maximum convinces me we are faced with a situation like that in United States v Fowle, supra, and that the same result must follow. See also United States v Estrada, 7 USCMA 635, 23 CMR 99.

Indeed, the inclusion of these policy considerations in the Manual, supra, in a blatant attempt to circumvent the prohibitions of Code, supra, Article 37,

10 USC § 837, contributed in no small part to our order that the use of that handbook by court members be discontinued. United States v Rinehart, 8 USCMA 402, 406, 24 CMR 212. Moreover, in United States v Mamaluy, 10 USCMA 102, 27 CMR 176, we were faced with instructions almost identical to those here and based upon the same Manual provisions. We there specifically rejected the contention that these factors might properly be included in the law officer's advice on the sentence and pointed out that they "have an overtone of severity against . . . [the accused]which he cannot possibly rebut by any reasonable means." United States v Mamaluy, supra, at page 107. And in United States v Brennan, 10 USCMA 109, 27 CMR 183, we ordered reappraisal of the sentence to cure the prejudice inherent in sentence instructions to the court members which informed them, *inter alia*, that "local conditions" should be considered in determining an appropriate penalty. See also United States v Fisher, 10 USCMA 111, 27 CMR 185, and United States v Horowitz, 10 USCMA 120, 27 CMR 194.

It is certain the last cited cases compel the *conclusion* that the law officer's instructions on sentence were erroneous. Indeed, the advice before us is much worse than the matters there involved. In these records, a host of considerations were set forth by the law officer as "factors" to be used in determining a proper sentence. Here, however, he highlighted the single consideration which was likely to affect the court in its deliberations in such a manner that it would be given controlling significance. In essence, he informed the court members that one previously convicted of a similar offense should ordinarily receive the maximum sentence. As nothing had been produced by the defense in mitigation and extenuation, there were clearly no circumstances by which the court could justify a failure to follow this "normal" procedure, and it accordingly applied it to the accused's case. That this occurred is so plainly depicted in this record that I cannot believe there is room for another view.

Finally, as noted above, we have condemned the insertion in the record of policy considerations affecting the sentence both by the trial counsel and the use of the Manual, supra. It is impossible to see how a different result may obtain when the same policy is interjected by the law officer in his instructions. United States v Mamaluy; United States v Brennan, both supra. The court members look to him as an impartial source of information concerning the sentence to be adjudged. When he declares that the maximum sentence is reserved for persons circumstanced as this accused, there is no doubt of the weight which will be attached to this advice. As in this record, its substantial impact is demonstrated by the immediate return of the maximum sentence.

My brothers apparently concede that the instruction was erroneous, as they refer to it as "questionable" and as having "doubtful value." Their affirmance is predicated upon the belief that its delivery to the court members could not have harmed the accused. As noted above, I am of the opposite view, and attention to their rationale will demonstrate wherein their reasoning strays beyond the bounds of logic and the law.

First, emphasis is placed upon the fact that the law officer's instructions elsewhere informed the court-martial that it had an unfettered discretion to determine an appropriate penalty. No importance, however, is attached to the fact that the same instruction also told the court members that an appropriate sentence was *normally the maximum* when an equally serious previous conviction was before them. Yet, that is precisely the effect of the law officer's reference to the *Manual* rule.

Secondly, the fact that the court actually imposed the maximum sentence is dismissed as "not [being] proof it believed *it had to do so.*" Having reached this point, it is then reasoned that there were other matters in the record which substantially justified the imposition of the maximum sentence. Those to which reference is

**250**

made include accused's false statements to a policeman; lack of evidence in mitigation and extenuation; and the fact that he had a previous conviction.

True it is there may be other reasons in the record for severely punishing this accused, but to say these formed the motivation for the imposition of the maximum sentence is to engage in the sheerest speculation and to ignore the fact that reversal is required if there is a fair risk the sentence may have been affected by the erroneous advice. United States v Brennan, supra; United States v Fowle, supra. Moreover, it is always possible to dissect out each circumstance in a case and to conclude that each, separately considered, does not lead to a conclusion that accused was prejudiced. However, that sort of reasoning ignores the inferences to be drawn from the totality of the matters to be considered. · When all factors present here are considered, one cannot help but conclude there is a fair risk that the instruction and the previous conviction led this court-martial to believe it was required to adjudge the maximum as an appropriate penalty.

Judge Latimer's separate opinion merely enlarges upon the factors discussed by the Chief Judge and, in condemning the use of the instruction as "vague, indefinite and uncertain," finds that it did not prejudice the accused. With regard to this conclusion, I simply invite attention to his language in United States v Brennan, supra, wherein the inclusion of "local conditions" as a matter to be weighed in connection with the penalty was held harmful. There, he said, for a unanimous Court, at page 110:

"The crime of which accused stood convicted carried with it a maximum period of confinement of five years. As previously stated, the accused was sentenced to three years' confinement, and this period was subsequently reduced to two years by the board of review. In a case such as this, where more than half the maximum sentence was awarded by the court-martial, we are unable to say, as a matter of law, that the error had no measurable impact."

I suggest that if we could not determine the impact of the erroneous instruction in *Brennan,* supra, upon the deliberations of the court-martial in that case, we surely cannot exclude at least a fair risk that the court in this case was influenced wrongfully in adjudging its sentence.

In sum, I believe this record necessitates the conclusion that the law officer, by his introduction of the Manual's policy regarding sentencing of second offenders, committed error prejudicial to the substantial rights of the accused. When the opposite result is reached, it has the effect of making an accused assume the impossible burden of proving beyond all doubt that his punishment resulted solely from the faulty instruction. This is not the law, and we should not depart from the proper rule merely because of a belief that this individual deserved what he received. Otherwise, we had best admit that we claim the authority to judge the appropriateness of sentences even though Congress has not seen fit to grant it to us.

I would reverse the decision of the board of review and order a rehearing on the sentence.