UNITED STATES, Appellee

v

JERRY P. RIGNEY, Airman Third Class, U. S. Air Force, Appellant

16 USCMA 617, 37 CMR 237

*Lieutenant Colonel Carl R. Abrams* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta*.

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a special court-martial convened at Yokota Air Force Base, Japan, charged with two specifications of wrongful appropriation of personal property (a bicycle and a radio) of a value of more than $20.00 but less than $50.00, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded guilty as charged and was sentenced to a bad-conduct discharge, confinement at hard labor for six months, and forfeitures of $50.00 per month for a like period. Intermediate appellate authorities have approved, without change, the findings and sentence.

We granted review to consider the appellant's assertion that the president of the court erred in his instructions on sentence when he told the court, in pertinent part, that:

"Normally, the maximum punishment will be reserved for an offense which is aggravated by its circumstances and the conditions surrounding its occurrence *or in case there is evidence of previous convictions.*" [Emphasis supplied.]

Since at that time the court had been informed of the appellant's previous conviction by special court-martial of four specifications of stealing bicycles, counsel assert that this portion of the instructions amounted to a directive to the court to adjudge the maximum sentence.[1] As a paraphrase of paragraph 76a(2), Manual for Courts-Martial, United States, 1951,[2] counsel equate this instruction to those policy directives previously condemned by this Court, in a long line of cases, which deprive the members of the free and unfettered exercise of their own discretion in selecting an appropriate sentence. United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Estrada, 7 USCMA 635, 23 CMR 99; United States v Holmes, 7 USCMA 642, 23 CMR 106; United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Starnes, 8 USCMA 427, 24 CMR 237; United States v McGirk, 8 USCMA 429, 24 CMR 239; United States v Mamaluy, 10 USCMA 102, 27 CMR 176; United States v Brennan, 10 USCMA 109, 27 CMR 183. While acknowledging that this Court in United States v Slack, 12 USCMA 244, 30 CMR 244, with Judge Ferguson dissenting, found error but no prejudice, where a similar instruction was given, counsel contend that the error in this case cannot be purged by an examination of the instruction as a whole on the ground that the other correct instructions do not cancel out the erroneous instruction. Also, that the prejudicial effect of the

---

[1] The sentence imposed was slightly less than the maximum in that the court could have imposed a forfeiture of $65.00 per month rather than $50.00.

[2] Normally the maximum punishment will be reserved for an offense which is aggravated by the circumstances, or after conviction of which there is received by the court evidence of previous convictions of similar or greater gravity.

error should not be assessed by an appellate tribunal since there is at least a fair risk that the decision to impose a punitive discharge was not properly passed on below.

In its rebuttal, the Government informed the court that:

". . . on 9 December 1966, by Special Court-Martial Order Number 228, Headquarters Amarillo Technical Training Center (ATC), Amarillo Air Force Base, Texas, so much of the sentence to confinement at hard labor in excess of four months and seventeen days and so much of the forfeitures in excess of $50.00 per month for four months and eleven days were remitted. By the same order, the execution of the bad conduct discharge was suspended until 9 June 1967, with provision for automatic remission. Subsequently, the accused was reassigned for duty with the 445th Fighter Intercepter Squadron, Wurtsmith Air Force Base, Michigan."

Contrary to the assertion of error by the appellant, the Government contends that the questioned instruction was proper; that it did not direct the court-martial to impose the maximum punishment as a mandatory requirement; and that the total thrust of all the instructions was that the court members were free to exercise their own discretion in adjudging an appropriate penalty.

Our view of this matter is necessarily governed by our previous opinion in United States v Slack, supra. There the law officer instructed in words lifted verbatim from paragraph 76a(2) of the Manual, supra. In this case, a paraphrase thereof was used, some words added and others deleted, but the substance remains the same. We reiterate what we said in *Slack*. The instruction is of doubtful value and "It suffers from the vice of the other parts of the 'instructional pattern' of paragraph 76 of the Manual which, in the *Mamaluy* case, we recommended be discarded in favor of 'instructions of more utility.'" (*Ibid.* at page 246.)

We are constrained, however, to agree with the Government's contention on the issue of prejudice to this appellant. The members of the court were informed that they alone were responsible for determining, within the limits prescribed by law, an appropriate sentence; that their decision should be based upon the evidence, their experience and general knowledge, and the ends of good order and discipline in the Air Force as well as on the needs of the accused and the welfare of society; that they should consider all the facts and circumstances, including all matters in extenuation and mitigation, background and character of the accused, his reputation in the squadron, his duty performance, and other traits which characterize a good airman. They were also informed that they might consider the fact that a plea of guilty, as here, was a saving in time, effort and expense to the Government; that such a plea also might be a manifestation of repentance and a first step toward rehabilitation; and that the sentence adjudged should be an adequate one and not excessive in reliance upon possible mitigating action by the convening or higher authority.

In these circumstances, we hold that the complained-of portion of the instructions did not play such a part as to represent a fair risk of prejudice to the appellant. United States v Slack, and United States v Mamaluy, both supra.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I agree with my brothers that the instruction here should not be given. It is patently erroneous and, in my opinion, an improper comment on the quantum of sentence which is to be adjudged on receipt of evidence of previous convictions. I so noted in my dissenting opinion in United States v Slack, 12 USCMA 244, 30 CMR 244. I reiterate those views here but, as in that case, I cannot agree there is no prejudice to the accused,

The instruction in question, lifted from paragraph 76a(2), Manual for Courts-Martial, United States, 1951, informs the court members that "Normally, the maximum punishment will be reserved for an offense which is aggravated by its circumstances and the conditions surrounding its occurrence *or in case there is evidence of previous convictions.*" (Emphasis supplied.)

Immediately before the quoted instruction was delivered to the court, evidence of accused's previous conviction for theft of bicycles, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, was introduced. Parenthetically, he was convicted in the instant case of wrongful appropriation of a bicycle and a radio, in violation of the same Article of the Code.

"Normally" refers to the ordinary or usual practice. Webster's New International Dictionary, 2d ed, page 1665. Thus, the court-martial was informed it was customary to impose the maximum sentence in cases in which evidence of previous convictions was introduced. As this was such a case, the instruction clearly advised the members that, absent some presentation through which the accused raised himself above the ordinary, he should receive that punishment. And the court almost exactly followed the instruction, for it adjudged a punitive discharge, the maximum term of confinement, reduction to the lowest possible grade, and missed the maximum forfeiture per month by only $15.00.

As long ago as United States v Fowle, 7 USCMA 349, 22 CMR 139, this Court condemned the bringing to the attention of the court-martial policy matters regarding what sentence should be imposed. See also United States v Littrice, 3 USCMA 487, 13 CMR 43; United States v Estrada, 7 USCMA 635, 23 CMR 99; and United States v Rinehart, 8 USCMA 402, 24 CMR 212. In United States v Mamaluy, 10 USCMA 102, 27 CMR 176, we expressed doubt that paragraph 76a was of any value even to reviewing authorities and denied the contention

there was any "authority for the proposition that the law officer may use the same ingredients in charging the court." United States v Mamaluy, supra, at page 106. We concluded in that case by pointing out, at page 107:

". . . Obviously, the difficulty with these instructions is that they pose theories which are not supported by testimony and which operate as a one-way street against the accused. They have an overtone of severity against him which he cannot possibly rebut by any reasonable means. In summation, proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof."

Finally, in United States v Slack, supra, we found the specific instruction before us erroneous. Thereafter, the Court parted on the issue of prejudice. The Chief Judge found no fair risk of its existence on the basis of the other instructions in the case. Judge Latimer, concurring, expressed the belief that the facts of the case—that accused for some four months had been an incorrigible; that his prior sentences had failed to deter his criminal tendencies; his lack of contrition; and the absence of any mitigating or extenuating circumstances—led the court-martial to impose the maximum sentence. He concluded, therefore, the instruction did not influence the punishment. I dissented, and found, where such an instruction is given and the maximum sentence thereafter adjudged, there is at least a fair risk the accused was prejudiced by the injection into the proceedings of an improper policy directive in the guise of an instruction to the court.

The same factors impel me to the conclusion that a fair risk of prejudice is present in the instant case. There is, of course, no way we can examine the mental processes of the fact finders and accurately discover the reasons which impelled them to adjudge a severe sentence. Indeed, if we could, I believe we would frequently be surprised as to the matters which they

take into consideration. Be that as it may, we can only examine an erroneous instruction in the light of the record and the sentence adjudged and inquire whether it might fairly be said that the error was capable of influencing the court in the performance of its duty. Here, I believe we necessarily must come to that conclusion. The court was told the *normal* practice was to adjudge a maximum sentence when evidence of a previous conviction was introduced. The accused was youthful; he had made full restitution; he presented favorable evidence in mitigation and extenuation; he had indicated contrition by his voluntary and provident plea of guilty; and his offenses—wrongful appropriation of a bicycle and a radio—were minor in nature. Yet, the court chose to inflict a severe punishment—to brand him forever with a punitive discharge, adjudge the maximum period of confinement, and impose a forfeiture amounting to $300.00, all for something less than petty larceny.

Under these circumstances, I cannot but conclude that the instruction, bad as it was, played a role in the sentence deliberations. As such, it seems clear a fair risk of prejudice to the accused exists and that he is entitled to reassessment of his sentence on that basis.

Turning to my brothers' rationale, I note they emphasize the other instructions on sentence which pointed out the court's independent role and duty to consider all factors presented to it. At no place, however, does that advice dissipate the earlier controlling effect given to the evidence of previous convictions by use of the word "normally" or eliminate the burden placed on the accused by that word to lift himself above the ordinary case and prove to the court he should not receive the maximum penalty.

In like manner, the subsequent diminution of punishment on appeal does not affect the question before us. Both the convening and supervisory authorities approved the sentence as adjudged. Neither reassessed the sentence in light of the error now before us. The board of review affirmed. True, the accused has now been probationally restored to duty, but only after serving the major portion of his sentence, and he remains subject to execution of his discharge until June 9, 1967. Hence, his sentence remains substantially that which was adjudged by the court-martial. Under such circumstances, I cannot believe the Court is correct in finding the erroneous instruction purged of harm to the accused.

In sum then, I remain convinced, as I was in United States v Slack, supra, that an improper instruction calling for imposition of a maximum sentence in the event of proof of previous convictions, may fairly be said to have been prejudicial, when the court-martial thereafter implements its injunction. At the least, a reassessment of the punishment below is demanded. Absent that, I would reverse and remand the case for such action.

I would reverse the decision of the board of review.