UNITED STATES, Appellee

v

NELSON ST. CLAIR WRIGHT, Fireman Recruit, U. S. Navy, Appellant

18 USCMA 348, 40 CMR 60

*Lieutenant Norman A. Wulf*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Ray M. Druley*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche*, USMC.

## Opinion of the Court

DARDEN, Judge:

On January 11, 1968, the accused—having entered a plea of guilty—was tried and convicted by a special court-martial aboard the U. S. S. FRANCIS MARION for absence without leave from 12:00 a.m., December 26, 1967, until 10:20 p.m., December 31, 1967. Relying upon the provision of paragraph 127c, Manual for Courts-Martial, United States, 1951, that permits the imposition of a punitive discharge when there have been two previous convictions, although such a discharge is not authorized as a punishment for the current offense, the court imposed a bad-conduct discharge, in addition to forfeiture of $86.00 per month for six months, and confinement at hard labor for a like period. The ship's Commanding Officer, as the convening authority, then reduced the period of confinement and forfeitures to three months. The supervisory authority, however, disapproved the conviction and the sentence as mitigated, finding deficiencies in three areas of the record: (1) Failure to tailor the presentencing evidence in keeping with the demands of United States v Wheeler, 17 USCMA 274, 38 CMR 72; (2) imposition of a punitive discharge based on two previous convictions when one was shown not to have had the final review necessary to make it admissible (United States v Pope, 5 USCMA 29, 17 CMR 29); and (3) because an out-of-court statement made by counsel in behalf of the accused raised a question as to the providence of the accused's plea.

At his rehearing by special court-martial on April 5, 1968, the accused was again convicted, pursuant to his guilty plea, of this same alleged absence without leave. In this instance, the sentence included a bad-conduct discharge, forfeiture of $86.00 per month for three months, and confinement at hard labor for three months. During the interim, the defective prior conviction had reached finality and thus became admissible. Hence, two prior convictions were again introduced against the accused for sentencing purposes. Cf. United States v Reed, 2 USCMA 622, 10 CMR 120. The convening authority approved the findings and sentence. However, the supervisory authority reduced the period of unauthorized absence from five to three days by changing the dates from December 26–31, to December 26–29, 1967. The sentence was approved. The board of review then affirmed the findings as well as the sentence.

Our consideration of this case is restricted to two specific areas of inquiry. Our first concern is whether Article 38(b), Uniform Code of Military Justice, 10 USC § 838, was complied with in this case. Essentially, this provision of the Uniform Code involves accused's right to and choice of counsel representation at trial by court-martial. United States v Donohew, 18 USCMA 149, 39 CMR 149, involving the same question, is controlling, for on this point the two cases are indistinguishable. Minimal but sufficient compliance in *Donohew*

**349**

causes us to conclude that there was satisfactory compliance with Article 38(b) here.

The remaining issue is whether the president's instructions that the previous convictions "logically indicate that a more severe sentence should be adjudged" prejudiced the accused. The president's instruction on sentencing matters included the following:

"In exercising its discretion in determining the punishment, if any, to be adjudged, the court must consider all the facts and circumstances of the case. It must give due consideration and appropriate weight to the following matters which have been presented to this court and which *logically* indicate that a more *lenient* sentence should be adjudged: The domestic family difficulties experienced by the accused, and the duration of the accused's pretrial restriction.

"The court is reminded that the accused entered guilty pleas in this case, and is advised that pleas of guilty are a matter in mitigation which must be considered along with all the other facts and circumstances in the case. Time, effort and expense to the government usually are saved by pleas of guilty, additionally, such pleas may be a manifestation of repentence [sic] and a first step toward rehabilitation.

"In exercising its discretion in determining the punishment, if any, to be adjudged, the court may also consider the following matters which have been presented to the court and which *logically* indicate that a more *severe* sentence should be adjudged: The previous convictions of the accused by Courts-Martial." [Emphasis supplied.]

Appellate defense counsel argue that the accused is prejudiced, since with this instruction the court no longer may exercise an absolute and unfettered discretion in reaching a determination of what constitutes a just and adequate sentence.

Appellate Government counsel look to the whole of the instruction and

find nothing detrimental to the accused. We are in accord with this assessment.

In United States v Wheeler, supra, at page 277, this Court inveighed against the use of "mere rote" instructions on maximum authorized punishments in cases in which the accused had offered mitigating evidence to the court in an attempt to reduce punishment. This tribunal did so because:

". . . [T]he whole thrust of this Court's opinions regarding presentence instructions has been to require the law officer to delineate the matters which the court-martial should consider in its deliberations. While the law officer has some discretion in this regard, we have expressly noted that such 'ought not to have the same restraining effect during the sentence procedure.' United States v Cook . . . [11 USCMA 579, 581, 29 CMR 395]."

At a later point the same opinion continued:

". . . In short, we reiterate here the duty of the law officer to tailor his instructions on the sentence to the law and the evidence, just as in the case of his prefindings advice. United States v Yocum [17 USCMA 270, 38 CMR 68], United States v Hutton, . . . [14 USCMA 366, 34 CMR 146]." [17 USCMA, at page 277.]

Partisanship was not intended, however, for the *Wheeler* decision also contains this important proviso:

". . . At the same time, the Government was likewise entitled to have advice presented regarding the other side of the coin, namely, that the retention of the accused was totally unjustified in light of his inexcusable failure to remain present for duty. We take no sides on the issue. We merely emphasize the duty of the law officer to advise the court-martial of the nature of its sole responsibility for the sentence; the exercise of its duty; and what it was entitled to consider." [17 USCMA, at page 278.]

In the present case, the president of this special court-martial followed the dictates of *Wheeler* to the fullest. In the first instance, he advised the court that in exercising its discretion in determining punishment:

". . . It must give due consideration and appropriate weight to the following matters which have been presented to this court and which *logically* indicate that a more lenient sentence should be adjudged: The domestic family difficulties experienced by the accused, and the duration of the accused's pretrial restriction." [Emphasis supplied.]

After advising the court that guilty pleas, since they are beneficial to the Government, were also a matter in mitigation, the president then turned to the evidence in aggravation by giving an instruction that now forms the basis for this assignment of error. The instruction in question reads:

"In exercising its discretion in determining the punishment, if any, to be adjudged, the court may also consider the following matters which have been presented to the court and which *logically* indicate that a more severe sentence should be adjudged: The previous convictions of the accused by Courts-Martial." [Emphasis supplied.]

We view the president's advice as a fulfillment of the instructional standard that *Wheeler* intended to inscribe. Domestic difficulties, the entering of a guilty plea, and pretrial restraint are surely mitigating matters favoring the accused. These factors "logically" indicate that a more lenient sentence should be adjudged. Prior convictions, under the same reasoning, "logically" indicate the propriety of adjudging a more severe sentence. If they did not, their evidentiary presence would be without meaning.

The president's instruction did no more than impart to the court advice that was obvious and that was admissible under *Wheeler*. Our conviction that this is so is reinforced by the court's being advised in a preceding paragraph that it alone was responsible for determining the sentence and that it was within the court's prerogative "to impose no punishment at all."

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

As the case reaches this Court, the accused, *after two trials*, stands convicted of a *three-day absence without leave*, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He has been sentenced to a bad-conduct discharge, confinement at hard labor for three months, and forfeitures of $86.00 per month for a like period. Since I disagree with my brothers' affirmance of this conviction, I believe a more detailed exposition of the facts is in order.

Defended by *nonlawyer counsel*, the accused originally entered a plea of guilty to being absent without leave for five days—from "on or about 2400, 26 December 1967, . . . until on or about 2020, 31 December 1967." He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, and partial forfeitures for the same period of time. The convening authority approved the conviction and the bad-conduct discharge but reduced the confinement and forfeiture portions of the sentence to three months each. The supervisory authority reversed the findings and sentence and ordered a rehearing on the following grounds: (1) Mitigation evidence indicated a possible defense to the charge of unauthorized absence for the period from December 29 to December 31, raising the question of improvidence of the plea (United States v Wright, 6 USCMA 186, 19 CMR 312); (2) evidence of one of the prior convictions (the existence of two prior convictions permitted the imposition of a bad-conduct discharge as additional punishment) had not, at time of trial, been finally approved by the supervisory authority, and, hence, was inadmissible; and (3) the president's failure to properly tailor his

instruction on sentence was error under United States v Wheeler, 17 USCMA 274, 38 CMR 72.

On retrial, the accused was *again defended by the same nonlawyer appointed defense counsel.* On behalf of the accused, counsel entered a plea of guilty to the original charge—unauthorized absence for five days. In mitigation he again told the court the story that caused the supervisory authority to question the providence of the plea with regard to two of the five days.[1] Trial counsel informed the president that he felt an improvident plea had been entered and suggested the taking of evidence. *Defense counsel replied that he had attempted to verify the accused's story with negative results,* indicating that he believed that when he could not prove the accused's story by other evidence, he was estopped from offering the accused's testimony as proof and that he had to plead his client guilty. Cf. United States v Vance, 17 USCMA 444, 38 CMR 242. No further action was taken by the president.

The president informed the court members that the maximum imposable sentence was a bad-conduct discharge, confinement at hard labor for three months, and forfeiture of two-thirds pay per month for three months; that the offense of which the accused was convicted did not, standing alone, authorize the imposition of a bad-conduct discharge; however, since the court had received proof of two previous convictions, a bad-conduct discharge was included as permissible additional punishment. He went on to state that in "exercising its discretion in determining the punishment, if any, to be adjudged, the court may also consider the following matters which

have been presented to the court and which *logically indicate* that a more severe sentence should be adjudged: The previous convictions of the accused by Courts-Martial." (Emphasis supplied.) The court members imposed the maximum sentence.

In his second action on the record, the supervisory authority approved only the accused's conviction of absence without leave for three days. He disapproved the other two days on the ground that the plea thereto was arguably improvident in view of the evidence in mitigation. Since, *in the interim between the trials, the record of the incomplete prior conviction had been brought up-to-date,* he approved the sentence as being within legal limits for a three-day unauthorized absence, when two prior convictions are also considered.

We granted review to determine the correctness of that portion of the president's instruction on sentence when he told the court that they may also, in adjudging a sentence, consider matters "which *logically* indicate that a more *severe sentence should be adjudged*: The previous convictions of the accused by Courts-Martial." (Emphasis supplied.) My brothers hold this not to be error since the president also instructed the court that they could also consider certain matters "which *logically* indicate that a more *lenient sentence should be adjudged*" (emphasis supplied), thus giving balance to the further instruction that the court could decide "to impose no punishment at all." I disagree.

Before proceeding to the issue, however, I believe some comments are in order to place the question in proper perspective.

[1] Accused was due to return to his ship at Norfolk, Virginia, on December 26, 1967. However, he lost his bus ticket in a house fire. On the 29th he allegedly reported to the Brooklyn Naval Receiving Station and attempted to get assistance from the Red Cross to enable him to return. He was told to return home and await Red Cross verification. He attempted to telephone

his ship but was unable to get through. On December 31, 1967, he boarded a bus which brought him to Norfolk. Defense counsel was unable to locate a record of accused's report to the Brooklyn Naval Receiving Station but suggested that it being Christmastime perhaps personnel there were lax in making a record.

According to the Table of Maximum Punishments, 1963 Addendum to the Manual for Courts-Martial, United States, 1951, paragraph 127c2, *the three-day unauthorized absence,* for which the accused was ultimately found guilty, is punishable by:

"Confinement at hard labor not to exceed one month, and forfeiture of two-thirds pay per month not to exceed one month."

However, Section B provides:

". . . If an accused is found guilty of an offense or offenses for none of which dishonorable or bad conduct discharge is authorized, proof of two or more previous convictions will authorize bad conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months. In such a case no forfeiture shall be imposed for any period in excess of the period of confinement so adjudged."

When this accused was originally tried, he pleaded guilty to being absent without leave for five days. The maximum punishment for this offense is confinement at hard labor and partial forfeiture not to exceed six months each. A punitive discharge is imposable *only* because of the receipt in evidence of *two* prior convictions. Paragraph 127c, Manual, supra. *Unfortunately for this accused,* his nonlawyer counsel did not recognize the inadmissibility of one of the records of a prior conviction, nor did he appreciate its significance insofar as the maximum imposable penalty was concerned. Had he interposed an objection, no punitive discharge could have been imposed and this case would not now be before us. United States v Pope, 5 USCMA 29, 17 CMR 29. *The action of the supervisory authority provided the Government with the opportunity to perfect its case.*

I question whether a situation of this nature affords even elementary justice. Two very important questions are presented in connection with the original trial—adequate representation by nonlawyer counsel and the presumption of regularity of military records which are required to be kept. While we did not grant on either issue, I believe some comment is appropriate.

With reference to the former, I expressed my views concerning the utilization of untrained counsel, where a bad-conduct discharge might result, in United States v Culp, 14 USCMA 199, 33 CMR 411. They need not be restated. Suffice it to say, this accused has become the victim of the danger inherent in the lay practice of the law. I do not place the blame at the feet of counsel in this case, because, as I stated in *Culp,* at page 219, "An officer of the armed services of necessity cannot receive the training required to perform adequately as counsel for an accused." Rather, the difficulty is within the system which allows such representation, which, as emphasized in *Culp,* only the Navy has seen fit to perpetuate. I iterate the hope I expressed in *Culp,* at page 221, that "the use of untrained officers as counsel will soon join those other anachronisms with which the history of military law is studded."

Military records, which are required by regulation to be kept, are clothed with a presumption of regularity. United States v Coates, 2 USCMA 625, 10 CMR 123; United States v Masusock, 1 USCMA 32, 1 CMR 32; United States v Takafuji, 8 USCMA 623, 25 CMR 127. When properly authenticated, they are entitled to be admitted into evidence. United States v Parlier, 1 USCMA 433, 4 CMR 25; United States v Henry, 7 USCMA 663, 23 CMR 127; United States v Takafuji, supra. Regulations in effect at all times important to this case required that an entry be made reflecting the final action of the supervisory authority with reference to the prior court-martial convictions. Absent such approval, a record of prior conviction is inadmissible in evidence. Article 44(b), Code, supra, 10 USC § 844; paragraph 75b(2), Manual, supra; United States v Pope, supra. As noted, when originally offered, one of the records of previous convictions had not been finalized and was, therefore,

inadmissible. Retrial of this case provided the Government with the opportunity to cure this defect. While this Court approved such a procedure in United States v Reed, 2 USCMA 622, 10 CMR 120, I find it offensive to the basic concepts of elementary justice. In addition, we are left with a record containing two documents, each of which purports to be a certified true copy of a prior conviction. One reflects finality of conviction and the other does not. In such a situation, *regularity of the contents* seems more like a high-sounding phrase than a legal maxim to be followed by lawyers and judges alike. Inasmuch as the Government bears the burden of convicting and sentencing an accused only by the use of admissible evidence, I would not allow this type of adjustment to the evidence to be made for the purpose of retrial of the case.

With reference to the granted issue, appellate defense counsel contend that when the court members were told that evidence of prior convictions would "logically indicate that a more severe sentence should be adjudged," their absolute and unfettered discretion to adjudge any sentence they desire, within permissible limits, was invaded. In effect, according to counsel, this cancelled out the previous advice that the court members must not interpret the president's instructions as indicating an opinion as to the kind or amount of punishment that should be adjudged. The Government, on the other hand, alleges that the instruction was not in error since it is logical that when prior convictions are considered a more severe sentence should be adjudged. In any event, the Government contends, when read as a whole, the instructions thoroughly and completely informed the members of their responsibility.

The *fact* of previous convictions was the basis for the imposition of the bad-conduct discharge, since the accused was convicted of a five-day absence, and the court was so informed. When the president additionally told the members that this evidence *logically* indicated the propriety of adjudging a more severe sentence than that im-

posable for the charged offense alone, he, in my view, imparted the idea that the only reasonable conclusion based upon a showing of prior convictions is a more severe sentence. I believe that this is an improper comment on the evidence. It is not unlike an instruction which invites the court-martial to compare the case before them with other cases of a generally similar nature (United States v Slack, 12 USCMA 244, 30 CMR 244; United States v Mamaluy, 10 USCMA 102, 27 CMR 176), or one that tells the court that normally the maximum punishment will be reserved for cases where there is evidence of prior convictions (United States v Rigney, 16 USCMA 617, 37 CMR 237), each of which we have previously held to be error.

Prior convictions provide insight into the character of the accused's service and are proper matters for consideration in adjudging an appropriate sentence. United States v Slack, supra. They do not, however, necessarily provide a single answer, such as, a more severe sentence than is normally permissible for the offense for which an accused was convicted. Succinctly stated, I believe that the advice compromised the discretion of the court in its consideration of the sentence. Cf. United States v Slack; United States v Mamaluy; United States v Rigney, all supra.

I take the same view of the president's instruction which told the court that certain specified matters in mitigation "logically indicate that a more lenient sentence should be adjudged." It, too, is an improper comment on the evidence.

In both instances, the instruction was quite obviously an expression of personal opinion and effectively cancelled his prior caution to the members that:

"The court is advised that my instructions must not be interpreted as indicating an opinion as to the kind or amount of punishment that should be adjudged. Each member of the court has independent responsibility of making his own determination."

The logic of the matter is for argument of counsel and not for judicial instructions.

Prejudice is apparent. The accused has ultimately been found guilty of a minor delict (a three-day unauthorized absence), one of the least serious of military offenses as to category and duration, as evidenced by the maximum imposable punishment for that offense alone. He has received the maximum sentence despite reduction of the offense and reassessment of the sentence by the supervisory authority and consideration by a board of review, which affirmed without comment. Failure of nonlawyer counsel to enter a proper objection at the first trial paved the way for the second trial and imposition of the maximum sentence, including a punitive discharge. Reversal is in order.

I would reverse the decision of the board of review and order the charges dismissed. United States v Sheeks, 16 USCMA 430, 37 CMR 50.