# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**MARSHAND A. WOODS**
**LIEUTENANT JUNIOR GRADE (O-2), U.S. NAVY**

**NMCCA 201300153**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 21 December 2012.
**Military Judge:** CDR Marcus Fulton, JAGC, USN.
**Convening Authority:** Commander, Navy Region Hawaii, Pearl Harbor, HI.
**Staff Judge Advocate's Recommendation:** LCDR K.A. Elkins, JAGC, USN.
**For Appellant:** LT Gabriel K. Bradley, JAGC, USN.
**For Appellee:** LT Ann E. Dingle, JAGC, USN.

**26 June 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of aggravated sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The members sentenced the appellant to five months confinement, forfeiture of all pay and allowances, and a dismissal. The convening authority approved the sentence as adjudged, but suspended adjudged forfeitures for a period of three months and waived automatic forfeitures

contingent on the appellant establishing an allotment for his spouse.

The appellant raises the following four assignments of error (AOEs): (1) that the military judge erred by denying a challenge for cause against the senior member; (2) that the military judge erred by admitting improper character evidence under MILITARY RULE OF EVIDENCE 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); (3) that the military judge erred by failing to find "some evidence" of unlawful command influence; and, (4) that the appellant's conviction is not legally or factually sufficient.[1]

After carefully considering the record of trial and the submissions of the parties we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to a substantial right of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

On 16 December 2011, the appellant and Lieutenant Junior Grade (LTJG) CT (female) attended a command holiday party at a hotel in Honolulu, HI. At the time they were both stationed aboard the same ship and were friends, sharing a common background as prior enlisted Sailors. Following the party the appellant, LTJG CT, LTJG VC (female) and Lieutenant TM (male) stayed overnight at the hotel in a room with two queen sized beds. LTJG CT reserved the room prior to the party and sent an email to other junior officers aboard the ship indicating others were welcome to stay there and split the cost. LTJG VC and LT TM were heavily intoxicated following the party and the appellant separately helped each of them to the room where they went to sleep in separate beds. LTJG CT and the appellant both drank considerable amounts of alcohol at the party, but neither was inebriated to the extent of LTJG VC and LT TM.

Following the party, LTJG CT and the appellant returned to the room; LTJG CT went into the bathroom and changed into pajamas and then went to sleep in the same bed as LTJG VC. Around 0100, LTJG CT woke up to the sensation of a hand in her underwear. She rolled to her back and realized someone's fingers were moving in and out of her vagina. Coming out of sleep it took LTJG CT a moment to realize she was being touched in this fashion. When she felt a body next to her

---

[1] This AOE is raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1992).

repositioning, LTJG CT sat up on the edge of the bed, looked over and saw the appellant lying next to her in the bed. Additionally, she noticed LTJG VC and LT TM sleeping in the same positions they had been in when she went to bed. While she was sitting on the edge of the bed, the appellant placed his hand on her shoulder and asked if she was ok. LTJG CT brushed his hand away and went into the bathroom. She testified she wanted to leave, but felt too intoxicated to drive, thought it would be difficult to find a taxi, and didn't want to leave LTJG VC in the room without her. Subsequently, she got into the bed where LT TM remained sleeping.

The next morning the appellant left early with LTJG VC because both were part of the ship's duty section for the day. The appellant and LTJG CT exchanged several text messages the following day during which LTJG CT complained to the appellant about his "touchy hands" and the appellant responded, "I'm sorry about that too and I want to keep your trust." Record at 626-27 and Prosecution Exhibit 2.

Additional facts necessary for the resolution of each AOE are developed below.

## Discussion

### *Challenge for Cause*

The appellant's first assignment of error avers that the military judge abused his discretion in denying a challenge for cause against Captain (CAPT) MV. The appellant argues CAPT MV should have been disqualified from sitting as a member because she believed that military members should be held to a higher standard and held to that belief despite attempts by the trial counsel and military judge to rehabilitate her. Appellant's Brief of 23 Dec 2013 at 12-13.

In response to a question on a court-martial member questionnaire that asked, "[w]hat is your opinion of the military justice system?" CAPT MV responded:

> There is not [a] perfect system, and I understand why the enforcement of 'you are guilty until proven innocent' (just the opposite as in the civilian sector) is essential because the military needs to be held to a higher standard just for reasons of our mission. It is a voluntary force and you come into

3

the service knowing that you will be held to this higher standard[] and give up your civil rights.

Appellate Exhibit L at 2.

In individual *voir dire,* the trial counsel and trial defense counsel questioned CAPT MV extensively regarding this answer. In response to the trial counsel's *voir dire* questions, CAPT MV stated she could follow the military judge's instructions that it is the Government's burden to prove guilt beyond a reasonable doubt and that the burden of proof belongs to the Government and never shifts to the accused. Record at 283. In response to the trial defense counsel's query about what she "meant by" her questionnaire response, she stated:

> Well, I mean I guess just the discussions that I've had with my husband. He's in the Army, Special Forces, and you know, this is, you know, we've talked about the military system and how we are held to a higher standard and never being – I've never dealt officially in a court-martial, and have been told, 'No, this isn't the way it works,' and so I understand the rules of the game, and I, you know, I don't have a problem following them. What I meant [to say] by that is yes, us military think we should be held to a higher standard since our behavior, because you know, we raise our hand, and we are defending our country.

*Id*. at 288.

Following both counsel's *voir dire* of CAPT MV, the military judge had the following exchange with her:

> MJ: Okay. Captain, going back to your answer to question 20, it appears that you, in fact, arrived at this court-martial with an erroneous understanding of the burden of proof in this case.
> CAPT MV: Right.
>
> MJ: Is that fair to say?
> CAPT MV: Yes.
>
> MJ: Okay. And your answer also tends to indicate that you might think that there would be a good reason for the military to operate under a system like the one that you presumed that we did.
> CAPT MV: Um-huh.

4

MJ:  I want to make sure in my own mind and for the record that you understand that the burden of proof in this case is on the government, that it never shifts to the defense.
CAPT MV:  Right.  I understand that.

MJ:  And that the obligation for a conviction in this case is that the government must prove their case beyond a reasonable doubt.  Do you understand that?
CAPT MV:  Yes.

MJ:  Are you completely comfortable with that?
CAPT MV:  Yes.

MJ:  You don't have any reservations in your own mind about following that instruction when I give it to you?
CAPT MV:  I don't have any reservations.

*Id.* at 296-97.

The trial defense counsel challenged CAPT MV for cause, contending she should be excused based on her questionnaire answer and her belief that military members should be held to a higher standard.  The military judge denied the challenge for cause against CAPT MV, stating:

I have specifically considered the liberal grant mandate and examined her answers for actual bias as well as implied bias.  I am going to focus here for a minute on her answers to the member's questionnaire pertaining to what the relevant burden of proof is in a court-martial.  It's absolutely the case that she did arrive at this court-martial under a misapprehension of what the burden of proof is at a court-martial.  I don't find that to be disqualifying. I evaluated her demeanor as she answered questions. When I asked her candidly "Did you --- were you under the impression that that was the relevant standard in these cases," and she says "Yes," and she acknowledged that that was a misapprehension on her part.  I asked her if she had any mental reservations at all about applying "the guilt beyond a reasonable doubt standard," and upon evaluating her credibility I found her to be credible when she said that she would have no mental reservations about applying the relevant

5

standard. If the relevant standard here were that she, you know, know what the correct standards are before she gets into court in order to be qualified, then that would be a problem, but I'm convinced that she is capable of following the instructions of the court and that she's ready and willing to do so. I disagree with defense counsel's assessment about her comments relating to holding people in uniform to a higher standard. I did not find that they were related to burdens of proof or the allocation of burdens of proof in courts-martial or civilian trials. I think in the full context of her answers she --- it was clear that she was discussing expectations of officers and Petty Officers and members of the service generally, so bearing in mind again the liberal grant mandate and actual or implied bias, I find that she is capable of sitting fairly as a member in this case.

*Id.* at 449-50.

RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) requires the removal of a court member "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule encompasses both actual and implied bias. *United States v. Clay,* 64 M.J. 274, 276 (C.A.A.F. 2007). Although actual and implied biases are not separate grounds for challenge, they do require separate legal tests. *Id*. Challenges for both actual and implied bias are based on the totality of the circumstances. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007). The burden of establishing the basis for a challenge is on the party making the challenge. *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (citing R.C.M. 912(f)(3)).

1. *Actual Bias*

A military judge's ruling on a challenge for cause based on actual bias is reviewed for an abuse of discretion. Because the question of whether a member is actually biased is a question of fact and involves judgments regarding credibility, the military judge is given significant deference in determining whether a particular member is actually biased. *Terry*, 64 M.J. at 302; *Clay*, 64 M.J. at 276. Here, the military judge determined that CAPT MV was not actually biased and simply misapprehended the burdens and standards associated with a court-martial. She quickly recognized and corrected her erroneous assumptions during the *voir dire* process and the military judge found she

6

was capable of following his instructions and that she was ready and willing to do so.  Based on the totality of these circumstances, we conclude that the military judge did not abuse his discretion in denying the challenge based on actual bias.

    2.   *Implied Bias*

The standard of review for implied bias is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006).  However, military judges who place their reasoning on the record and consider the liberal grant mandate will receive more deference on review.  *Clay*, 64 M.J. at 277. Here, the military judge recognized and applied the liberal grant mandate and articulated his analysis on the record, and his ruling should therefore be given greater deference.

The test for implied bias is objective.  Viewing the situation through the eyes of the public and focusing on the perception of fairness in the military justice system, we ask whether there is too high a risk that the public will perceive that the appellant received less than a court composed of fair and impartial members.  *United States v. Wiesen,* 56 M.J. 172, 176 (C.A.A.F. 2001).  As in actual bias, we analyze implied bias based on the totality of the circumstances.  *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004).

Here, the military judge clearly understood the rule for implied bias and the liberal grant mandate.  Citing to the mandate and articulating a lengthy and thoughtful analysis on the record, he granted eight of ten defense challenges for cause.  Invoking the same implied bias analysis and giving due consideration to the liberal grant mandate, he denied the challenge against CAPT MV.  We agree with the military judge's conclusion that CAPT MV's was not referencing allocation of the burden of proof at a court-martial when stating her belief that military members are held to a higher standard of behavior.  We conclude that, viewed objectively, a member of the public would not question the fairness of CAPT MV sitting as a panel member. Considering the totality of the circumstances, we find that the public would perceive this panel to be fair and impartial and conclude that the military judge did not err in denying the defense's challenge against CAPT MV based on implied bias.

**Evidence of Other Crimes, Wrongs, or Acts**

The trial defense counsel made a pretrial motion to exclude evidence that LTJG CT previously rejected romantic overtures from the appellant. The Government provided notice under MIL. R. EVID. 404(b) that they intended to offer the evidence. The defense contended that such evidence was irrelevant because of the Government's theory that LTJG CT was substantially incapacitated at the time of the offense, therefore consent or mistake of fact to consent was not in issue. Additionally, the defense contended MIL. R. EVID. 403 required exclusion of the evidence. Citing the test set forth in *United States v. Reynolds,* 29 M.J. 105 (C.M.A. 1989), the military judge found the evidence admissible because consent was in issue for a specification of wrongful sexual contact and also because the evidence showed the appellant's motive to engage in sexual activity with LTJG CT. AE XXXV at 3. The military judge's ruling specifically permitted the Government to introduce evidence that during a temporary additional duty trip to San Diego in the fall of 2010, the appellant called LTJG CT when she was in her hotel room and asked her what she was doing and what she was wearing. LTJG CT then hung up the phone on him and shortly thereafter, the appellant showed up at LTJG CT's room wanting to enter and LTJG rebuffed this advance telling him, "Do we need to have this conversation again? I told you I'm never going to have sex with you." *Id.* Additionally, the military judge held the Government could introduce evidence of a prior instance when LTJG CT told the appellant she was not interested in sex with him to give context to her statement about having the conversation again. *Id.*

The three-part test for the admission of MIL. R. EVID. 404(b) evidence at trial is set forth in *Reynolds,* 29 M.J. at 109. First, the evidence must reasonably support a finding that the appellant committed prior crimes, wrongs or acts; second, the evidence must show a fact of consequence is made more or less probable by the existence of this evidence; and third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Id. See also United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006).

In applying the *Reynolds* test, the military judge made detailed and specific findings. The military judge found that the first prong was satisfied through the LTJG CT's testimony, which supported the conclusion that the accused committed the acts. The military judge found her testimony during the motions hearing to be credible and uncontroverted. AE XXXV at 2. With respect to the second prong, the military judge found "that the evidence in question tends to show motive on the part of the

8

[appellant] to engage in sexual conduct with [LTJG] CT." *Id.* at 3. When analyzing the evidence under *Reynolds'* third prong, the military judge concluded the probative value was substantial because it involved direct interaction between the accused and the complaining witness and the risk of unfair prejudice was low considering the conduct in question was "not criminal or even uncommon." *Id.* In sum, the military judge concluded, "[i]t will not unfairly prejudice the members against the [appellant] to learn that he expressed an interest in and was rejected by [LTJG] CT in this way." *Id.*

Despite the military judge's ruling, the Government did not seek to introduce evidence of these prior interactions between LTJG CT and the appellant during the course of her testimony. The issue arose when a member submitted the following question for LTJG CT: "Did [the appellant] ever approached [sic] you to tell you that he was attracted to you?" AE LVIII. In response, LTJG CT testified:

> Based on previous interaction, things that he had said and done, I knew that he wanted to have sex with me. I tried to make it as clear as possible that it was never going to happen. Not only was he a colleague, but he was married, and I would not cross the line with someone at work that I worked with, a fellow shipmate, and I made that very clear on one occasion. I even told him that we were friends and if he couldn't ---- I gave him an ultimatum and told him that if he couldn't respect our friendship and my boundaries that we would not be friends at all.

Record at 696-97.

The trial defense counsel objected during LTJG CT's response, and the military judge permitted the witness to fully answer. *Id.* at 697. The trial defense counsel maintained LTJG CT went beyond the military judge's instruction to the witness during an Article 39(a), UCMJ, session immediately preceding her testimony in front of the members, to "confine [her] answer to the fact that it was [her] sense the [the appellant] was attracted to [her] and that [she] told [the appellant] before this incident that [she wasn't] interested in anything other than a friendship relationship." *Id.* at 691-92. While the military judge agreed that LTJG CT's response was somewhat broader than he prescribed from the bench, he did not find it broader than his pretrial ruling on the evidence. *Id.* at 699.

9

The appellant contends the military judge erred in permitting admission of this evidence.

We review a military judge's ruling admitting evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). The challenged action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997) (citations and internal quotation marks omitted).

In light of the relevant case law, and giving the military judge the deference he is due for having set forth on the record a clearly articulated basis for his decision on this issue, we do not find an abuse of discretion in this case.

## Unlawful Command Influence

The trial defense counsel brought a motion to dismiss for unlawful command influence, alleging that senior leaders within the Department of Defense and the Department of the Navy had, through public statements and training programs related to sexual assault[2], created an environment in which the appellant

---

[2] The defense motion cited the following statements:

A. Secretary of Defense, the Honorable Leon Panetta:

    i. General Dempsey and I consider [sexual assault] a serious problem that needs to be addressed. Commanders must hold offenders appropriately accountable.

    ii. The command structure from the chairman on down have made very clear to the leadership in the department that [sexual assault] is intolerable and it has to be dealt with. We have absolutely no tolerance for any form of sexual assault.

    iii. But what is required is that everyone, from the secretary to the chairman of the Joint Chiefs all the way down, every command level, be sensitive to this issue, be aware that they bear the responsibility to take action on these cases. The most important thing we can do is prosecute the offenders.

B. Secretary of the Navy, the Honorable Ray Mabus:

    i. Every day there seems like there's a new report of sexual assault on some of our folks. And this is not just a perception – there is hard data to back it up. In both of the last two years, there has been an average of over 900 sexual assaults a year – 900…Three times a day, somebody in our force

10

gets assaulted. . . Three times a day. . . And that many assaults are blue-on-blue.

      ii.  Another disturbing trend is that reports are coming in later . . . And this creates problems because as time passes, evidence gets degraded, everything is lost.  It's a lot more difficult to do an accurate investigation and it's a lot harder to hold offenders responsible with every day that passes between attack and report of investigation.

      iii.  This is the sort of training – it's focused training – that's needed to ensure that every Sailor and Marine understands the basic message that sexual assaults are not okay, they're not acceptable and they're not going to be tolerated and that everybody has got to protect everybody else – that we've got to look after our shipmates – and that alcohol is not the only way to have a good time on liberty.

      iv.  Almost every case of assault involves alcohol use by the victim, by the offender or by both.  It's fuel to the fire.

      v.  If prevention fails, we have to be ready to respond and to hold offenders accountable.

      vi.  To allow members of our force to be attacked an average of three times a day, every day of the year is just wrong.  This cannot continue . . . It's got to get better and it is not getting better.

      vii.  It's just wrong.  We have a responsibility to do something about it.  Three times a day – three times a day…If we are going to protect our shipmates, we cannot allow this to continue.  If we are going to remain the Navy and Marine Corps that people look up to and should look up to, this cannot continue.

      viii.  Go make this work.  Protect our shipmates.  End this scourge.

C.  Chief of Naval Operations, Admiral Jonathan Greenert:

      i.  On average, [sexual assaults] take place every day.  Yes, every day.

      ii.  [It] is important that we support sexual assault victims and hold offenders accountable.

      iii.  This is my problem and this is your problem.  Sexual assault is unacceptable and its roots need to stop at all levels; I can't tolerate it and you shouldn't either.  It undermines our Navy Core Values and Ethos, and it undercuts safety and readiness.  We need to address it for what it is – a real danger.
      iv.  I've been at this in earnest for almost three years saying we have got to do something about this.  And the numbers aren't changing.  We have about 600 of these a year.  So today about two sailors are going to sexually assault two other

could not receive a fair trial.  The military judge denied the motion stating:

> I find that in this case, the Defense has not shown facts that constitute unlawful command influence.  That senior commanders and office holders make pronouncements and promulgate policies that they view as being in the best interest of the service is not surprising, and, as long as they remain outside the courtroom, these do not constitute unlawful command influence.  *United States v. Estrada,* 23 C.M.R. 99, 102 (C.M.A. 1957).  I am confident that through voir dire and instruction the court will consist of members who will understand that this case is to be judged according to the law and the facts, not on pronouncements.  I am further convinced that an objective, disinterested observer full informed of all the facts and circumstances would not harbor a significant doubt about the fairness of the proceedings.  *See United States v. Lewis,* 63 M.J. 405, 416 (C.A.A.F. 2006)
>
> As the Defense has not met its initial burden to produce some evidence of facts that constitute unlawful command influence, the burden to disprove that the proceedings are tainted by unlawful command influence has not shifted to the Government.

AE XLIX at 4.

The appellant asserts that the military judge erred by failing to find "some evidence" of unlawful command influence at the trial level, thereby prejudicing the appellant by not fully litigating the issue.

We review unlawful command influence *de novo*. *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).  Article 37(a), UCMJ, states, "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or reviewing authority with respect to his judicial acts."  The appellant has the initial burden of producing sufficient evidence to raise unlawful command

---

sailors.  That's the statistics.  I don't know if it bothers you, but it bothers the hell out of me.

AE IV at 2-5.

12

influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). This threshold is low, but it must be more than "a bare allegation or mere speculation." *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994) (citation omitted).

To raise the issue on appeal, the appellant must show: (1) facts which, if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that unlawful command influence was the cause of the unfairness. *Stombaugh*, 40 M.J. at 213. The appellant must meet this initial burden before the burden shifts to the Government to demonstrate beyond a reasonable doubt either that there was no unlawful command influence or that the proceedings were untainted. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).

In this case, the appellant has failed to show facts which, if true, constitute unlawful command influence. Taken as a whole, the messages contained in the complained of statements amount to nothing more than direction to subordinate leaders to take sexual assaults seriously. The messages do not attempt to direct a particular disposition in sexual assault cases and do not give a suggestion of appropriate punishment for offenders. In short, the statements do not meet the first prong of the *Stombaugh* test.

Additionally, we find that the appellant has also failed to meet the second and third prongs of the *Stombaugh* test. Even if we were to assume that taken as a whole, the complained of statements create the appearance of undue influence, the appellant still has not met his burden to show: 1) that the proceedings were unfair; and 2) that unlawful command influence was the cause of the unfairness. *Stombaugh*, 40 M.J. at 213. The appellant has failed to meet his initial burden of production on unlawful command influence and therefore we decline to grant relief.

### Legal and Factual Sufficiency

We review questions of legal and factual sufficiency *de novo*. *United States v. Winckelmann*, 70 M.J. 403, 406 (C.A.A.F. 2011). The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offense, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not

13

personally observe the witnesses. *Id*. at 325. In this case we find in the affirmative as to both.

In this assignment of error, the appellant does not point to a specific deficiency of proof, but rather asserts LTJG CT's testimony at trial was inconsistent with her testimony at the Article 32, UCMJ, hearing, and therefore the evidence was insufficient to prove the charges beyond a reasonable doubt. The term "reasonable doubt" does not mean that the evidence must be free of any conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007) (citation omitted). When weighing the credibility of a witness, this court, like a fact-finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake such as a lapse of memory or a deliberate lie. *United States. v. Goode*, 54 M.J. 836, 844 (N.M.Crim.Ct.App 2001).

Conducting our own legal and factual sufficiency analysis we disagree with the appellant's assertion. LTJG CT's testimony clearly established that she awoke to the appellant inserting his fingers into her vagina. The appellant's text message exchange with LTJG CT the following day corroborated that he touched her and demonstrated his consciousness of guilt. After thoroughly reviewing the record, we find that a rational trier of fact could have found the essential elements of the offenses were proven beyond a reasonable doubt, and we are ourselves convinced beyond a reasonable doubt as to the appellant's guilt.

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

Chief Judge MITCHELL and Judge JAMISON concur.

For the Court

R.H. TROIDL
Clerk of Court

14